We move to the sixth case this morning, Burmester v. Berryhill. May it please the Court. My name is Stephen Kidd. I represent Plaintiff Appellant Betty Burmester. This is a Social Security Disability Appeal. We believe that the Administrative Law Judge for Social Security committed reversible errors primarily in three areas. First, the ALJ failed to properly account for Ms. Burmester's inability to sustain her concentration, persistence, or pace. Secondly, the ALJ failed to properly evaluate Ms. Burmester's statements according to Social Security's rulings. And thirdly, the ALJ failed to properly weigh the medical opinions in the case. Unless the Court has initial questions or concerns, I'm going to start with Ms. Burmester's inability to sustain concentration, persistence, or pace. First, just as a small side matter, the ALJ found that she had a moderate impairment in this area. It's not clear where that moderate impairment came from. Dr. Rattan, who is the state agency non-examining consultant, found that she had no severe mental impairment. Her treating psychiatrist said that of the 16 areas of mental aptitude needed for unskilled work, she either had no ability or very limited abilities, which seems on its face more severe than a moderate finding. That moderate finding doesn't appear anywhere. It doesn't come from a functional capacity evaluation or any medical opinion. Secondly, even assuming arguendo that a moderate impairment is the appropriate level to find, the ALJ failed to account for it. O'Connor Spinner and his progeny tells us that an ALJ has to account for moderate limitations in concentration, persistence, and pace, both in the residual functional capacity finding and in the questions to the vocational expert. The ALJ did neither of those things here. It's very clear cut. In the residual functional capacity evaluation, the ALJ limited her to simple, routine, repetitive work. Varga tells us that simple work is not enough to accommodate concentration, persistence, or pace issues. The complexity of work is a distinct consideration from your ability to stick to work. Also, the ALJ gave no questions whatsoever to the vocational expert that would even hint at this. Now, the commissioner argues that the ALJ doesn't have to use magic words such as concentration, persistence, or pace. They don't have to use that exact phrase, but they do have to say something, and the ALJ didn't ask any sort of limitations of the vocational expert that would indicate increased breaks, a slower work speed, a supervisor to check on her, something that would help if a person had deficiencies in that area. The second major point is the ALJ failed to properly evaluate Ms. Burmester's statements according to the Social Security rulings. The ALJ relied on a few different erroneous analytical principles, the first of which he relied on a couple of inconsistent statements about substance abuse. One time Ms. Burmester said that she did not use cocaine to her doctor, and one time she said that she did not use it ever to a Social Security examiner. She later rehabilitated both of those statements, but those are two inconsistent statements over the course of a record that spans years. The ALJ used those two inconsistent statements to essentially color the entire credibility finding, which is inappropriate under SSR 16-3P. Secondly, the ALJ also relied on perceived improvement, but that perceived improvement, one, fell very late in the record. She alleged disability starting in September of 2009, and the earliest evidence that the ALJ cites is November of 2012, where he says that she was responding to treatment, and then by October of 2013, her arthritis was well controlled. Even if she was experiencing improvement during that time period, and even if it was well controlled by 2013, that doesn't account for the previous four years that she was alleging disability. If the ALJ is relying on an improvement, then there has to be some sort of bright line that says, okay, well, she got better at this point, so she's no longer disabled, or the ALJ has to address what was going on in that earlier period and show why she was disabled anyway. He didn't do that. Secondly, on that point, the perceived improvement doesn't appear sustained. Ms. Burmester was continuing to receive very significant treatment all the way through the end of the administrative record. The last records appear in February of 2014, and I believe the DLI, yes, February 2014, and the DLI is June 30th of 2014, so just a few months up to that. And that latest medical treatment is a chiropractic visit, where she's getting treatment for cervical and lumbar spine disorders. She's also experiencing knee pain during that visit. So even after the surgery, the ALJ says, well, she got a lot better because her knee pain was improved after the surgery, and that may be true on a temporary basis, but the record reflects that it was in fact temporary, that her treatment continued, and she was continuing to get a number of treatments, medications and surgeries. Thirdly, the ALJ also relied on some fairly minimal and largely unexplained activities of daily living, essentially blowing these out of proportion and saying that because she can do these minimal things, she must be able to work a full workday. A few notable highlights is a visit to a sister in Houston. She says she went to Houston to care for her sister. There's one note in the record that has any detail with that whatsoever, and it's that she, quote, watched over, unquote, her sister. That's it. There's no other details about what that is. That could be anything. That could be sitting and providing companionship, going to fetch a glass of water, changing the television remote control because she can't see the TV. We have no idea what that is. That's very analogous to this court's ruling in Cullinan. Cullinan said that there was a dearth of information about how a person cared for a sick relative, other than the fact that that person encouraged the sick relative to eat more healthy. The court said that that's not a reasonable basis. There's certainly nothing that suggests that she would be able to do full-time competitive work because she went to go visit a sister. Another one is reading. She said she likes to read four hours a day. She likes to read nonfiction. There's no indication about how that was conducted, the efficacy of that, whether she retained what she read, whether she could retain it the next day, how quickly she read. For all I know, she spent four hours on one page of the TV guide. Technically four hours, technically nonfiction. We have no idea how it was conducted. She could read for an hour and take a break for an hour, all day long. But even if she did read something more complicated than the TV guide, and even if she did do it for four hours a day, that's not eight hours a day. That's not evidence that she could sustain her concentration for a full workday on a sustained basis day after day after day. This is analogous to this court's analytical logic of finding that just because a person can stand and walk 50 feet up and down a hallway on a consultative exam, that's not necessarily dispositive that they can stand and walk all day long. Even if she could pay attention for four hours a day, which again is not clear, it's not evidence that she could do it all day long. The ALJ also relied on a few other minimal things. Driving, even though she stopped driving, she tried to travel two blocks and got lost 25 blocks from her house. She went to a book club, but she stopped going to the book club because it was overwhelming to her. She went to church, she paid bills, she walked her dog. These sort of minimal activities are not inconsistent with an allegation of an inability to sustain a full week. The last major point is the ALJ failed to properly weigh the medical opinions. The ALJ relied on two non-examining consultative opinions, Doctors Foster and Walcott. Doctors Foster and Walcott didn't have access to over three years' worth of the medical records. Coincidentally, that's the same time period that the ALJ is finding that she experienced improvement. These doctors never even saw that. No doctor for the agency said that she experienced improvement during that time period. The ALJ just went out on a limb and said so. With regards to her treating doctors, Dr. Bustos rejected that opinion because Dr. Bustos made one inconsistent statement about her sitting and standing tolerances, and we concede that that's inconsistent. But that one inconsistency isn't enough to color the entire opinion. Dr. Bustos rendered an opinion on a number of areas of her physical capacity and also said that she had difficulty sustaining her concentration because of her pain, that it affected her emotional issues. Dr. Santana was the treating psychiatrist. Dr. Santana said that she had no useful ability to sustain concentration for two-hour segments. This is very similar to Dr. Myers, who is a state agency examining physician, who said that she could pay attention for up to one hour on enjoyable activities. An inability to sustain concentration for two hours is essentially the same as being able to pay attention only for one hour, and the ALJ failed to account for that. Social Security ruling 8515 says ordinarily a person has to be able to sustain their concentration in two-hour segments. That's two hours, a morning break, two hours, a lunch, two hours, an afternoon break, two hours you go home. If you can't sustain your concentration for two hours, you're going to have a hard time holding down the job. Dr. Bustos said that she had a hard time maintaining her concentration. Dr. Santana said she had a hard time maintaining her concentration. Dr. Myers, a state agency examiner that had no personal relationship to her, said she had a hard time sustaining her concentration. The ALJ should have accounted for that. If there are no questions, I'll reserve the remainder of my time. Thank you, Counsel. Thank you. Mr. Jaynes. May it please the Court. Your Honors, Mr. Kidd, ladies and gentlemen, Daniel A. Jaynes on behalf of the Commission. Your Honors, today Burmester asked you to change the standard of review to do away with substantial evidence and patently wrong, to leave the bench and become ALJs yourselves who will weigh the evidence, resolve conflicts, and make disability determinations. We, on the other hand, would just simply ask that you do what you've always done, look at the decision and see if it comports with the substantial evidence standard. More than a mere scintilla, less than a preponderance, determining whether the ALJ cited such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. And under this deferential standard of review, the ALJ's decision should be affirmed. Take Burmester's physical functioning, for instance, where the ALJ crafted an RFC backed by two state agency opinions. And these two state agency opinions came in 2011. This was before Burmester's improvement that found her capable of light work. Yet the ALJ went even farther than these opinions. The ALJ also cited radiofrequency ablation in March of 2011 that resolved her lower back pain, significantly better rheumatoid arthritis, and a 90% improvement with knee pain. And there were many normal examinations as well, including one where Burmester walked up and down stairs carrying 10-pound weights. This, Your Honors, is substantial evidence. Now Burmester asks you to step in and weigh the evidence yourselves and give credit to Dr. Bustos. But as Burmester conceded here, the opinion of Dr. Bustos was self-contradictory. It said that Burmester could do more in two hours than she could in an eight-hour day. In addition, the ALJ properly discounted this opinion, finding it inconsistent with all other opinions in the record on physical functioning and inconsistent with Dr. Bustos' own many normal examination findings, including normal gait. These are valid reasons that should be affirmed. And the same is true of Burmester's mental functioning. The ALJ adopted the well-supported opinion of Dr. Myers, whose opinion was consistent with her improvement with psychiatric treatment. This opinion was more restrictive than the opinion of Dr. Rutan and consistent with examination findings. But again, Burmester wants you to be the ALJ and to weigh the evidence yourself and credit Dr. Santana. But the ALJ discounted Dr. Santana, recognizing Dr. Santana as the clear outlier. Dr. Santana's opinion was inconsistent with those of Dr. Myers and Dr. Rutan. It was inconsistent with notes showing improvement in logical thought processes. And the restrictions in Dr. Santana's report were extreme and unsupported. For instance, the doctor found that Burmester had no useful ability to remember work-like procedures, but almost every memory examination, including those from Dr. Santana, were normal. Burmester also cites the district court cases to argue that the ALJ must rely on a single medical opinion for his RFC finding. This court has recognized that the ALJ's RFC finding need not match one opinion and that the ALJ does not have to adopt an opinion. Instead, it is the ALJ who weighs the evidence, resolves conflicts, and decides RFC. And then this court determines whether a reasonable mind could accept those conclusions, even if a different conclusion could be reached because this is less than a preponderance. And here, a reasonable mind could find that these opinions and evidence make the ALJ as adequate evidence to support the ALJ's conclusion. Burmester first argues that there's no evidence from 2011 or before, but we have the state agency opinions. And then Burmester turns and argues that the state agency opinions are outdated. But Burmester noticeably avoids that her lawyer told the ALJ she had no objections to the relevancy of the evidence in the record. And she also asked the court to give great weight to Dr. Bustos, but Dr. Bustos' opinion is older than one of the state agency opinions she says is outdated. Regardless, though, this is not a case where the ALJ interpreted raw medical data. Ninety percent improvement after surgery is not ambiguous. The resolution of back pain after radiofrequency ablation is not ambiguous. And walking up and down stairs carrying 10-pound weights is not ambiguous. As this court has said, the duty to develop the record is not limitless. And if a new opinion was needed every time new evidence came into the record, the case might never end. Burmester also purports to challenge moderate deficiencies in concentration and persistence in pace, but it's actually a challenge to Dr. Myers. And in a 37-page brief to the district court, Burmester never made this challenge, so this challenge is waived. Regardless, the ALJ's decision enjoys the support of Dr. Myers, who wrote at the end of his opinion under a title that says statement of work capacity that Burmester could manageably maintain attention and concentration. And the ALJ used this decision, and after assessing moderate deficiencies in concentration, persistence, and pace, presented the VE requirements such as simple routine and repetitive tasks, only being able to do simple work-related decisions, only being able to handle work with few changes in the routine, and occasional contact with others. So while the argument is waived, the ALJ still properly relied on the opinion of Dr. Myers. And finally, Burmester argues that the subjective evaluation should be overturned because Social Security Ruling 16-3P should be found retroactive, despite a Supreme Court case saying that retroactivity is not favored and you look to the language of the ruling. And in this case, the language says that it should apply as of March of 2016, which is two years after the ALJ's decision. But regardless, while we contend that 96-7P governs, the patently wrong standard, a standard that this Court has recognized for over 30 years, including as recently as twice last week, governs here. And under patently wrong, Burmester's argument washes away because the ALJ discounted her allegations as inconsistent with her improvement, inconsistent with allegations of her daily activities. And while Burmester made much of that, what the ALJ said was that her allegation that she isn't able to get out much is very much inconsistent with allegations of all her travel. If you look through the record, she traveled to Las Vegas, she traveled to Houston, traveled to Atlanta to visit a brother. She was happy she had free flights so she could go visit an aunt, and she made multiple trips to the casino. This very much overshadows a statement that she does not get out often. And the allegations were also very much inconsistent with one another. And for these reasons, we ask that you uphold the substantial evidence standard and affirm the ALJ. And unless your honors have any questions, thank you. Thank you, Counsel. I'll give you a minute, Counsel. I appreciate that, Judge. Thank you so much. First, very quickly, my opponent says that the ALJ added all of these additional limitations out of the goodness of his heart and yet did not play doctor. How do we know that those additional limitations are the appropriate limitations? If you actually take a look at her doctor's medical opinions, they're more in excess of what the ALJ found. There's no evidentiary basis that the ALJ found the right level on that. Secondly, I'd like to say that we're also not arguing that you should do away with substantial evidence standard. That's the standard. But we are saying that you don't need to rely on the patently wrong standard. 16.3p rests on objective criterion. Are the statements reasonably consistent with the record? That's all we're talking about. And, in fact, Pope V. Shalala from this court says that where a ruling is a mere clarification of a previous ruling, then retroactive application is appropriate. Even the agency's own statements on it isn't dispositive about the application of it. What is dispositive is whether or not the new ruling is patently inconsistent with the old ruling. And they're not inconsistent. In fact, they use large swaths of the same language, cut and pasted, paragraph by paragraph. Old ruling to new ruling. But the change does mean that we can't use general standards of credibility, someone's demeanor, whether they exhibited pain complaints, to gauge whether or not they experienced the symptoms. I see I'm out of time. Thank you so much. Thank you, counsel. Thanks to both counsel. The case is taken under advisement, and the court will stand in recess.